UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES SWEENEY, ANTHONY DELAROSA, on their own behalf and on behalf of those similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Cause No. 1:17-cv-3550-WTL-MPB |
| COMMISSIONER, INDIANA DEPARTMENT OF CORRECTION, | )<br>)<br>) |
| Defendant. | ) |

## ENTRY ON PLAINTIFFS' MOTION TO CERTIFY CLASS

This cause is before the Court on the Plaintiffs' Motion to Certify Class (Dkt. No. 5). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.[1]

### I. RULE 23 STANDARD

Federal Rule of Civil Procedure 23 governs class actions. Rule 23 requires a two-step analysis to determine whether it is appropriate to certify a particular class. First, the plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Williams v. Chartwell Fin. Servs.*, *Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). Second, the action must satisfy one of the conditions of Rule 23(b). *Id.* The

---

[1] The DOC's motion to file a sur-reply is **GRANTED** (Dkt. No. 20). The Clerk is instructed to docket Dkt. No. 20-1 as a sur-reply to the Plaintiffs' Motion to Certify Class as Class Action (Dkt. No. 5).
    The Plaintiffs' motion to accept declarations in support of the motion for class certification (Dkt. No. 29) is **DENIED**. The Court finds that additional evidence in support of the Plaintiffs' motion is unnecessary to the Court's determination.

Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001) (citation and quotation omitted).

## II. BACKGROUND

The named plaintiffs in this case, Charles Sweeney and Anthony Delarosa, are adult residents of Indiana who are committed to the Defendant Indiana Department of Corrections ("DOC") and are confined at Wabash Valley Correctional Facility. On April 1, 2017, the DOC implemented Executive Directive #17-13. The Directive provides, in relevant part:

> The purpose of this Executive Directive is to direct all Department Facilities to disallow incoming offender correspondence with colored envelopes, colored paper, and greeting cards mailed to offenders through the United States Postal System (USPS). This Executive Directive is applicable to all Department facilities and is effective April 1, 2017.
>
> In order to impede the introduction of narcotics and synthetic narcotics into the Department's facilities, greeting cards, colored envelopes, and colored paper shall no longer be considered allowable correspondence. On the effective date, greeting cards, colored paper, and colored envelopes entering the facility via the USPS shall be processed in accordance with Section XII, "Disposition of Incoming Correspondence," and Section XIII, "Report of Action Taken on Correspondence," of Policy and Administrative Procedure 02-01-103, "Offender Correspondence."
>
> Incoming correspondence to offenders must be in a plain white envelope and the letter/correspondence inside the envelope must be on originally purchased, plain white, lined paper (no photocopies).
>
> This Executive Directive does not affect the electronic greeting cards available through JPay. Facilities are directed to notify the offender population, in their customary manner, of this change. Offenders shall be encouraged to notify their family, friends, and other correspondents of this change.

Dkt. No. 1 at 9.

The Plaintiffs' Complaint alleges that Executive Directive #17-13 violates the First Amendment, as applied to the DOC by the Fourteenth Amendment. The Plaintiffs seek a

declaration to that effect and also seek injunctive relief enjoining the application and use of Directive #17-13.

The DOC has filed an Amended Notice of Suggestion of Mootness (Dkt. No. 23), indicating that Executive Directive #17-13 has been rescinded. As such, the DOC argues, the relief sought by the Plaintiffs is no longer possible.

The Plaintiffs have responded, arguing that because the relevant portions of the new directive, Executive Directive #17-66, are virtually identical to the prior directive, Plaintiffs' claims that the restrictions on incoming mail violate the First Amendment are not moot. Executive Directive #17-66 provides, in relevant part:

> The purpose of this Executive Directive is to update and clarify the directions, outlined in Executive Directive # 17-13, to disallow incoming offender correspondence with colored envelopes, colored paper, and greeting cards mailed to offenders through the United States Postal System (USPS). This Executive Directive is applicable to all Department facilities and is effective immediately. Effective November 2, 2017 Executive Directive # 17-13 is rescinded, replaced by this Executive Directive.
>
> In order to impede the introduction of narcotics and synthetic narcotics into the Department's facilities, greeting cards, colored envelopes, colored paper, newspaper clippings, and any personal correspondence printed/written on any paper other than originally purchased plain white, lined paper shall no longer be considered allowable correspondence. On the effective date, greeting cards, colored paper, colored envelopes, and any personal correspondence printed/written on any paper other than originally purchased plain white, lined paper (no printer paper) entering the facility via the USPS shall be processed in accordance with Section XII, "Disposition of Incoming Correspondence," and Section XIII, "Report of Action Taken on Correspondence," of Policy and Administrative Procedure 02-01-103, "Offender Correspondence." Staff shall return any such correspondence to the sender, if known, that cannot be delivered to the offender.
>
> Incoming correspondence to offenders must be in a plain white envelope and the letter/correspondence inside the envelope must be on originally purchased, plain white, lined paper. All stamps shall be removed from the envelope prior to the offender receiving his/her mail. This Executive Directive does not prohibit correspondence on originally purchased plain white, lined paper and plain white envelopes that have text printed on them manually or electronically; newspaper

articles, if printed on plain white, lined paper; or drawings/artwork, if included as a photograph on photography paper.

Legal mail is exempt from this Executive Directive and shall be processed in accordance with Policy and Administrative Procedure 02-01-103, "Offender Correspondence," and Policy and Administrative Procedure 00-01-102, "Offender Access to the Courts."

Religious correspondence mailed by a religious organization, not an individual, may be exempt from this Executive Directive provided that the facility Chaplain or Warden/designee approves the correspondence prior to issuing the correspondence to the offender. This Executive Directive does not affect the electronic greeting cards available through JPay. Facilities are directed to notify the offender population, in their customary manner, of this change. Offenders shall be encouraged to notify their family, friends, and other correspondents of this change.

Dkt. No. 24-2 at 1-2.

While a case becomes moot if the government repeals, revises, or replaces the challenged law and removes the complained-of defect, *see Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017), here, the new directive still contains the prohibitions about which the Plaintiffs complain. As such, the case is not moot, and the Court retains jurisdiction.

In response to the replacement of Executive Order #17-13 with Executive Order #17-66, the Plaintiffs have revised their proposed class definition to the following: "All prisoners confined to facilities operated by the Indiana Department of Correction or that are otherwise subject to Indiana Department of Correction executive directives and policies." Dkt. No. 16 at 2-3.

### III.   DISCUSSION

Before the express requirements of Rule 23 can be addressed, and before the class can be certified, the Plaintiffs must show that the class is "sufficiently definite to warrant class certification." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Gomez v. Ill.*

4

*State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). The Seventh Circuit has emphasized that classes "defined by the activities of the defendants" are generally sufficiently definite to satisfy this requirement. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 987 (7th Cir. 1977).

In the instant case, the proposed class has been defined as "All prisoners confined to facilities operated by the Indiana Department of Correction or that are otherwise subject to Indiana Department of Correction executive directives and policies." Dkt. No. 16 at 2-3.

The DOC argues that the proposed class is a fail-safe:

> Plaintiffs' proposed class definition requires significant individualized determination of each member of the putative class, given that Plaintiffs have failed to allege any Constitutional violations in their Complaint. That factor being sufficient alone for Plaintiffs' definition to fail, the result of that significant individualized inquiry results in an impermissible fail-safe class as those putative members who would fail the inquiry would, by definition, not fit within the class.

Dkt. No. 15 at 7.

A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). Here, the proposed class includes all prisoners who are subject to the policy, and the proposed class definition is not defined in terms of the DOC's liability or in terms of success on the merits. As such, the proposed class is not a fail-safe class.[2]

---

[2] Further, if the class is certified and the Plaintiffs lose, *res judicata* will bar all DOC prisoners from relitigating the claim. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015).

The DOC also argues that the Plaintiffs do not yet meet the putative class definition because there has been no determination as to whether they suffered the alleged harm. According to the DOC, the Court must first determine whether the Plaintiffs' First Amendment rights were actually violated. The Court is perplexed by this argument, for which the DOC has not provided any legal support. In assessing whether a class should be certified, the Court is not to address the merits of the case. *See Driver v. Marion Co. Sheriff*, 859 F.3d 489, 492 (7th Cir. 2017).

Turning to the first express requirement of Rule 23, numerosity, the Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although Rule 23 does not identify a threshold number to establish numerosity, classes as few as forty have been found sufficient, but not necessarily so. *See Pruitt v. City of Chicago*, 472 F.3d 925 (7th Cir. 2006). The Defendant has conceded that the proposed class of more than 25,000 individuals satisfies the numerosity requirement.

The second requirement of Rule 23(a) is the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To demonstrate commonality for the purposes of Rule 23(a)(2), a prospective class must show that its claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Plaintiffs' allegation that the Executive Directive restricting incoming correspondence violates the First Amendment poses a question of law that is common to the class. The determination of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of

claims from all class members, there is a common question."). As such, the Plaintiffs meet the second requirement.

The third requirement is typicality: "the claim or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The Seventh Circuit has stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The DOC makes the following argument:

> Not only has it been clearly shown that Plaintiffs failed to meet the commonality burden under Rule 23(a)(2), Plaintiffs' claims as the class representatives clearly fail as they are atypical from the broader claims attempting to be certified. Plaintiffs allege violations of their preferences, but never allege an actual restriction or violation of any Constitutional rights. Whether other members of the putative class faced the same, or any alleged violation of such rights, is simply unknown, but the preferences of two individuals cannot be imputed to 25,000 others.

Dkt. No. 15 at 11. The Court disagrees that the Plaintiffs have not alleged a Constitutional violation. *See, e.g.*, Dkt. No. 1 at 2 ("This expansive burden on the ability of the prisoners being able to receive information violates the First Amendment to the United States Constitution as applied to the DOC by the Fourteenth Amendment to the United States Constitution."); Dkt. No. 1 at 8 ("Executive Directive 17-13 violates the First Amendment to the United States Constitution as applied to DOC by the Fourteenth Amendment.").

The issue in this case—whether the Executive Directive restricting incoming mail to prisoners is constitutional—affects all prisoners who are subject to it. While different prisoners may be affected by the policy in different ways, all class members need not suffer the same

injury as the named class representatives. *Rosario*, 963 F.2d at 1018. Thus, the Plaintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory. As such, the Plaintiffs meet the third requirement.

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018. In *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (internal quotation and citation omitted), the court noted that "adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." Here, the Court finds the Plaintiffs to be adequate representatives without any conflicts or antagonistic claims to the proposed class members. All members of the putative class are subject to the Executive Directive restricting incoming correspondence. The Plaintiffs have a sufficient stake in the outcome and will be zealous advocates of the class. In addition, the DOC does not dispute that counsel for the Plaintiffs is experienced in class actions and other complex litigation and thus satisfies that requirement. Accordingly, the Court finds that the Plaintiffs meet the fourth requirement.

Having satisfied the four requirements of Rule 23(a), the Plaintiffs have not yet met their burden. They must also satisfy one of the requirements of Rule 23(b). Here, the Plaintiffs claim—and the DOC does not dispute—that they satisfy Rule 23(b)(2), which allows a class action to be maintained if the party who opposes the class "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." As the Seventh Circuit has found, Rule

"23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015). As the Plaintiffs seek to obtain declaratory and injunctive relief that is designed to benefit the entire class, the Court finds that the requirement for Rule 23(b)(2) is met.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Certify Class (Dkt. No. 5) is **GRANTED**, modifying the class definition to the following: "All prisoners confined to facilities operated by the Indiana Department of Correction or that are otherwise subject to Indiana Department of Correction executive directives and policies that restrict incoming correspondence." Moreover, the Court **DESIGNATES** Charles Sweeney and Anthony Delarosa as representatives for the class action pursuant to Rule 23. The Court further **DESIGNATES** Kenneth J. Falk as lead class counsel pursuant to Fed. R. Civ. P. 23(g). **Within 21 days**, the Plaintiffs shall file a motion to approve notice to the class.

**SO ORDERED: 5/2/18**

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.