UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES SWEENEY and ANTHONY DELAROSA, on their own behalf and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> COMMISSIONER, INDIANA DEPARTMENT OF CORRECTION, <br><br> Defendant. | Cause No. 1:17-cv-3550-WTL-MPB |

### ENTRY ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This cause is before the Court on the Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 9). The motion is fully briefed, and the Court held a hearing on the motion on June 15, 2018. The Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I. BACKGROUND

The named plaintiffs in this case, Charles Sweeney and Anthony Delarosa, are adult residents of Indiana who are committed to the Defendant Indiana Department of Corrections ("DOC") and are confined at Wabash Valley Correctional Facility. On April 1, 2017, the DOC implemented Executive Directive #17-13, which regulates how inmates may receive non-legal mail.[1] The most recent version of the regulation is Executive Directive #18-34, which provides, in relevant part:

---

[1] Executive Directive #17-13, which was the first executive directive to address this issue, was enacted on March 20, 2017. On November 2, 2017, Executive Directive #17-13 was rescinded and replaced by Executive Directive #17-66. Executive Directive #18-34 was issued on May 30, 2018, and became effective immediately.

The purpose of this Executive Directive is to re-authorize Executive Directive # 17-66, prohibiting incoming offender correspondence with colored envelopes, colored paper, and greeting cards mailed to offenders through the United States Postal System (USPS). This Executive Directive is applicable to all Department facilities and is effective immediately. Effective May 30, 2018 Executive Directive # 17-66 is rescinded, replaced by this Executive Directive.

In order to impede the introduction of narcotics and synthetic narcotics into the Department's facilities, greeting cards, colored envelopes, colored paper, newspaper clippings, and any personal correspondence printed/written on any paper other than originally purchased plain white, lined paper shall no longer be considered allowable correspondence. On the effective date, greeting cards, colored paper, colored envelopes, and any personal correspondence printed/written on any paper other than originally purchased plain white, lined paper (no printer paper) entering the facility via the USPS shall be processed in accordance with Section XII, "Disposition of Incoming Correspondence," and Section XIII, "Report of Action Taken on Correspondence," of Policy and Administrative Procedure 02-01-103, "Offender Correspondence."

Incoming correspondence to offenders must be in a plain white envelope and the letter/correspondence inside the envelope must be on originally purchased, plain white, lined paper. Photographs shall be permitted provided they are printed onto originally purchased, plain white, lined paper. All stamps shall be removed from the envelope prior to the offender receiving his/her mail. This Executive Directive does not prohibit correspondence, including computer-printed newspaper articles and drawings/artwork, on originally purchased plain white, lined paper and plain white envelopes that have text printed on them manually or electronically.

Legal mail is exempt from this Executive Directive and shall be processed in accordance with Policy and Administrative Procedure 02-01-103, "Offender Correspondence," and Policy and Administrative Procedure 00-01-102, "Offender Access to the Courts."

Religious correspondence mailed by a religious organization, not an individual, may be exempt from this Executive Directive provided that the facility Chaplain or Warden/designee approves the correspondence prior to issuing the correspondence to the offender.

Educational correspondence mailed from an educational organization, not an individual, may be exempt from this Executive Directive, provided the Warden or designee approves the correspondence prior to issuing the correspondence to the offender.

This Executive Directive does not affect the electronic greeting cards available through JPay. Facilities are directed to notify the offender population, in

> their customary manner, of this change. Offenders shall be encouraged to notify their family, friends, and other correspondents of this change.
>
> The Warden has the discretion to determine the disposition of correspondence that is not addressed in this Executive Directive. This includes the discretion to copy all correspondence outside of Legal Mail, that is not from a religious or educational organization in their official capacities (i.e., as part of course work).

Dkt. No. 64-1 at 1-2. The regulation was put in place to make it easier for prison staff to determine whether any liquid substances have been concealed in paper. Narcotics and synthetic narcotics have been sent through the mail into prisons by soaking them into paper. Lined paper reveals variations in the lines if the paper has been soaked and thus allows for easier detention of illicit substances.

## II.     DISCUSSION

The Plaintiffs ask the Court to declare that Executive Directive #18-34 violates the First Amendment, as applied to the DOC by the Fourteenth Amendment, and also seek injunctive relief enjoining the application and use of Directive #18-34.

A preliminary injunction is "an extraordinary remedy" that "[i]s never awarded as a matter of right." *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018) (quotation and citation omitted). A two-step inquiry applies when determining whether such relief is required. First, the party seeking the preliminary injunction has the burden of making a threshold showing: (1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits. If the movant successfully makes this showing, the court must engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether

the harm to other parties or the public sufficiently outweighs the movant's interests. *Id.* (citations omitted).

## A. <u>Likelihood of Success</u>

In order to demonstrate a likelihood of success on the merits in the context of seeking a preliminary injunction, a plaintiff "must only show that his chances to succeed on his claims are 'better than negligible.'" *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017), *cert. dismissed sub nom. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ. v. Whitaker ex rel. Whitaker*, 138 S. Ct. 1260 (2018) (quoting *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)). "This is a low threshold," *id.*, and is one that the Plaintiffs meet.

The Defendant acknowledges that prisoners have a First Amendment right to receive information through the mail, although it disagrees with the Plaintiffs' argument that the Executive Directive restricts the Plaintiffs' ability to do so. As the Plaintiffs point out, printers and copy machines are not routinely stocked with lined, non-printer paper. Further, not all printers and copiers can print or copy on such paper; it depends on the machine itself and on the type of lined paper used. The Court finds that the Executive Directive does interfere with the Plaintiffs' First Amendment rights, as it limits the form of communication in such a way as to interfere with prisoners' ability to receive communications.

To assess the validity of the impingement on prisoners' First Amendment rights, the Court must determine "whether a prison regulation that burdens fundamental rights is reasonably related to legitimate penological objectives, or whether it represents an exaggerated response to those concerns." *Turner v. Safley*, 482 U.S. 78, 87 (1987). Several factors are relevant in determining the reasonableness of the regulation at issue. First, there must be a "valid, rational

4

connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89 (quotation and citation omitted). The Plaintiffs concede for the purposes of the preliminary injunction that this first factor does not favor the Plaintiffs. Specifically, they acknowledge that there is a relationship between prohibiting prisoners from accessing physical mail and stopping unlawful drugs.

Second, the Court must consider whether there are alternative means of exercising the right that remain open to prison inmates. "Where other avenues remain available for the exercise of the asserted right courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Id.* at 91 (quotations and citations omitted). The Defendant points out that the Executive Directive does not regulate items based on content. It allows the Plaintiffs to receive documents that are mailed in a plain white envelope and printed on plain white, lined paper; or sent electronically via JPay. However, these restrictions require correspondents to use paper that is not commonly used for printing or copying. Nor is JPay a completely viable alternative, as not all prisoners have routine access to the JPay kiosks, and not all correspondents have access to the internet from which they can send JPay communications. Further, the cost of having items printed from JPay—$.10 a page—is likely insurmountable for some prisoners.

The Court will consider the third and fourth factors together: the impact that accommodating the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources and whether there are ready alternatives to regulation. *Turner*, 482 U.S. at 90. When an obvious, easy alternative exists, the Court may conclude that the regulation is not reasonable but is instead an exaggerated response. *Id.* "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to

valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91. Here, an obvious easy alternative exists—prison staff can copy all incoming correspondence—and has been successfully implemented by at least two prisons. Further, the Defendant acknowledges that in the facilities where photocopies are being made, no additional staff is needed because prison staff already screens each piece of incoming mail using a light table. The only cost of implementing the alternative would be the cost of purchasing a copy machine for each facility. As such, the copying of all mail rather than screening it will not create an increased workload for the guards or negatively impact prison resources. This alternative also will fully address the penological concerns that the Executive Directive promotes.

Having considered the *Turner* factors, the Court finds that they weigh in favor of the Plaintiffs. Accordingly, the Plaintiffs have demonstrated a likelihood of success on the merits.

### B.      Inadequate Remedy and Irreparable Harm

Because Executive Directive #18-34 violates the Plaintiffs' First Amendment rights, they face irreparable harm for which a preliminary injunction is appropriate. *Elrod v. Burns*, 427 U.S. 357, 373 (1976).

### C.      Balance of Harms

Once a moving party has met its burden of establishing the threshold requirements for a preliminary injunction, the court must balance the harms faced by both parties and the public as a whole. This is done on a "sliding scale" measuring the balance of harms against the moving party's likelihood of success. *Whitaker*, 858 F.3d at 1054 (citations omitted). The more likely he is to succeed on the merits, the less the scale must tip in his favor. The converse, however, also is true: the less likely he is to win, the more the balance of harms must weigh in his favor for

an injunction to issue. *Id.* (citations omitted). Without an injunction, the Plaintiffs will be faced with having their First Amendment rights violated on an ongoing basis. As the Seventh Circuit has recognized, if a governmental entity is applying a policy in a manner that violates First Amendment rights, then the "claimed harm is no harm at all." *Christian Legal Society v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006). Further, "injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 859. Because the Plaintiffs have demonstrated that they likely will suffer harm if an injunction is not granted, the injunction is in the public interest, and the Defendant does not articulate harm other than the cost of the copiers,[2] the Court finds that the balance of harms weighs in favor of granting the Plaintiffs' request.

### III. CONCLUSION

For the reasons set forth above, the Plaintiffs' motion for preliminary injunction (Dkt. No. 9) is **GRANTED**. The Defendant is enjoined from applying Executive Directive #18-34. This preliminary injunction shall take effect **30 days** from the date of this Entry. No bond is required.[3]

SO ORDERED: 9/24/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[2] While the Defendant also points to the risk to DOC employees and the costs to some facilities of constructing appropriate mailrooms, these concerns do not seem to be unique to the alternative of copying, but rather apply equally to the current procedures under the directive. Further, it seems likely that if correspondents know that all incoming mail will be copied, fewer will try to send in drugs through the mail.

[3] While the Defendant argues that a bond should be required, the Court takes judicial notice of its own docket, which makes clear that the vast majority of prison inmates are indigent.